IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 9, 2003 Session

# RICHARD W. FELDMAN, M.D. v. TENNESSEE BOARD OF MEDICAL EXAMINERS

**Direct Appeal from the Chancery Court for Davidson County**
**No. 01-3680-1     Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2002-02784-COA-R3-CV - Filed November 12, 2003**

---

This is an appeal from a Chancery Court's review of an administrative hearing concerning violations of the Tennessee General Rules and Regulations Governing the Practice of Medicine for advertising. For the following reasons, we affirm the decision of the Tennessee Board of Medical Examiners.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Frank J. Scanlon, William R. O'Bryan, Jr., Richard C. Rose, Nashville, TN, Attorneys for Appellant

Paul G. Summers, Attorney General & Reporter, Sue A. Sheldon, Senior Counsel, Nashville, TN, for Appellee

## OPINION

### Facts and Procedural History

Dr. Richard Feldman, M.D. ("Feldman" or "Appellant") is the president and an owner of the corporation, Doctor's Diet Program, Inc. As a physician, Feldman testified he was the first in Tennessee to advertise his services beginning in 1979. He has four offices located in Nashville, Hendersonville, Clarksville, and Murfreesboro. A majority of Feldman's patients come with concerns of obesity and he utilizes the diet suppressant, Phentermine, which is a Class IV controlled substance.

In February 2000, Feldman mailed approximately eight thousand postcards on one occasion to past and present patients of his practice offering a 50% discount on one session if the patient

brought with them a new patient for his program. The idea of offering such a discount originated with Joe Cook, who was in charge of marketing for Feldman's corporation. Though Feldman is unsure he ever actually gave the discount, he stated that he would have if a patient referred to him a new patient for the month the discount was offered.

Upon instructions from the Department of Health, Jackie Henderson ("Henderson") visited Feldman's Nashville office in July 2000 to pick up an original of the postcard that Feldman mailed in February and to check if Feldman had a directory of licensed practitioners posted in a conspicuous place. Upon inspection, Henderson noticed that no such directory was posted, but Feldman had his license displayed in a conspicuous place on the wall. In addition, Feldman and his nurse practitioner, Carolyn Drake, wore name tags.

In May 2001, the Tennessee Department of Health sent notice of charges to Feldman alleging violations of two advertising regulations[1] promulgated by the Board of Medical Examiners ("Board") and Tenn. Code Ann. § 63-6-214(b)(1) for "[u]nprofessional, dishonorable or unethical conduct." At a hearing before Administrative Law Judge Marion P. Wall, the Board, after the parties rested, found Feldman had violated Rule 0880-2-.13(4)(t) prohibiting the offering of consideration in return for referrals but had not violated Rule 0880-2-.13(4)(p) requiring the posting of a directory

---

[1] The regulations at issue, General Rules and Regulations Governing the Practice of Medicine Rule 0880-2-.13(4)(p) ("Rule 0880-2-.13(4)(p)" or the "directory regulation") and Rule 0880-2-.13(4)(t) ("Rule 0880-2-.13(4)(t)" or the "referral regulation"), state the following:

> The following acts or omissions in the context of advertisement by any licensee shall constitute unethical and unprofessional conduct, and subject the licensee to disciplinary action pursuant to T.C.A. § 63-6-214(b)(9).
>
> ***
>
> (p) Failure to include the corporation, partnership or individual licensee's name, address, and telephone number in any advertisement. Any corporation, partnership or association which advertises by use of a trade name or otherwise fails to list all licensees practicing at a particular location shall:
>
>> 1. Upon request provide a list of all licensees practicing at that location; and
>>
>> 2. Maintain and conspicuously display at the licensee's office, a directory listing all licensees practicing at that location.
>
> ***
>
> (t) Directly or indirectly offering, giving, receiving, or agreeing to receive any fee or other consideration to or from a third party for the referral of a patient in connection with the performance of professional services.

of licensed individuals because he had not acted willfully. Feldman appealed the Board's decision to the Chancery Court of Davidson County, which affirmed the decision of the Board, and then to this Court for review of the following issues as we perceive them:

I.     Whether Feldman's advertisement constituted commercial speech under the First Amendment of the United States and Tennessee Constitutions, which is entitled to intermediate scrutiny;
II.    Whether the Board erred when it interpreted the words "third party" in Rule 0880-2-.13(4)(t) to include Feldman's past and present patients;
III.   Whether the Board must find that Feldman acted dishonorably, unprofessionally, or unethically to be in violation of Rule 0880-2-.13(4)(t); and
IV.    Whether the Board erred when it found that Feldman had willfully violated Rule 0880-2-.13(4)(t).

For the following reasons, we affirm the decision of the Board of Medical Examiners.

## Standard of Review

For review of an administrative hearing, we do not follow a *de novo* standard. Instead, we are directed by the Uniform Administrative Procedures Act which states:

> The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
>> (1) In violation of constitutional or statutory provisions;
>> (2) In excess of the statutory authority of the agency;
>> (3) Made upon unlawful procedure;
>> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
>
> In determining the substantiality of the evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (2003). Substantial and material evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Pace v. Garbage Disposal Dist. of Washington County*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965). Generally, substantial and material evidence is more than a mere scintilla or glimmer but less than a

preponderance. *Wayne County v. Tenn. Solid Water Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988). In addition, an agency's decision is not arbitrary or capricious if there is any rational basis for its conclusions. *MobileComm of Tenn. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 101, 104 (Tenn. Ct. App. 1993) (citing *Pace Co., Div. of AMBAC I., Inc. v. Dep't of Army*, 344 F. Supp. 787, 790 (W.D. Tenn. 1971)).

## Commercial Speech and Constitutional Protection

In a pretrial motion hearing, Feldman argued that, because his postcards constituted commercial speech, the State should have the burden of proving the basis of the rule regulating that speech. However, the Administrative Law Judge declined to instruct the Board that the State held such a burden. Feldman asserts that the rule should be subjected to the four part test articulated in *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980). In that case, the United States Supreme Court presented the test as follows:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Cent. Hudson*, 447 U.S. at 566. The State argues, at the outset, that because the content of the commercial speech concerns illegal activity it should be afforded no protection under the *Central Hudson* test. Specifically, the State cites Tenn. Code Ann. § 63-6-225(b) (1997) which states that "[p]ayments by physicians in return for referrals are prohibited" and gives such conduct the status of a Class B misdemeanor. Even though there is no evidence that Feldman actually gave the discount to a current or former patient in return for a referral, it is inconsequential in applying the *Central Hudson* test. To receive protection, the commercial speech must *concern* lawful activity. The postcard mailing at issue in this case is offering consideration in the form of a discount in return for a referral which, this Court holds, concerns illegal activity and, therefore, warrants no protection under the rigors of the *Central Hudson* test. For this reason, we affirm this decision by the Administrative Law Judge.

## Interpretation of Rule 0880-2-.13(4)(t)

Next, Feldman argues the Board erred when it found that his current or former patients could constitute a "third party" under Rule 0880-2-.13(4)(t). In general, "courts must give great deference and controlling weight to an agency's interpretation of its own rules." *Jackson Express, Inc. v. Tenn. Pub. Serv. Comm'n*, 679 S.W.2d 942, 945 (Tenn. 1984) (citing *Envtl. Def. Fund, Inc. v. Tenn. Water Quality Control Bd.*, 660 S.W.2d 776, 781 (Tenn. App. 1983); *Puerto Rico Mar. Shipping Auth. v. Fed. Mar. Comm'n*, 678 F.2d 327 (D.C. Cir. 1982)). The administrative interpretation controls unless it is plainly erroneous or inconsistent with the regulation itself. *Bowles v. Seminole Rock &*

*Sand Co.*, 325 U.S. 410, 414 (1945); *Udall v. Tallman*, 380 U.S. 1, 16-17 (1965); *Jackson Express, Inc.*, 679 S.W.2d at 945.

Appellant argues that, because Rule 0880-2-.13(4)(t) uses the word "patient" later in the same section, "third party" cannot be construed to include a patient. Therefore, as Appellant asserts, the Board erred by applying the regulation to him since he sent the discount postcards only to current and former patients. We find Appellant's argument is without merit.

In its findings of fact, the Board found that Feldman's corporation advertised a discount of "fifty percent (50%) off to *those who bring* a 'diet buddy' on their next visit" and concluded that Feldman had violated Rule 0880-2-.13(4)(t) quoting that section in its entirety (emphasis added). Clearly, the Board interpreted the phrase "third party" to include past and present patients of Feldman. Because the Board interpreted "third party" this way, that interpretation controls unless it is plainly erroneous or inconsistent with Rule 0880-2-.13(4)(t). Upon review, there appears no such plain error or inconsistency in the Board's interpretation.

First, there is no plain error given the traditional definition of "third party" and the fact that the regulation does not define what persons are included in or excluded from this term's scope. Generally, a third party is one who is not a party to the agreement but may have some rights in that agreement. *Black's Law Dictionary*, 1327 (5th ed. 1979). Rule 0880-2-.13(4)(t) prohibits a physician from offering any fee or other consideration to a third party for the referral of a patient. In this instance, the current or former patient is being offered a discount for the referral of a new patient to Feldman. Therefore, there is no plain error in the Board's interpretation that a current or former patient of Feldman falls within meaning of "third party" for the rule.

Next, the Board's interpretation that a current or former patient can be "third party" is not inconsistent with Rule 0880-2-.13(4)(t) and its purpose. In the policy statement for the Rule, it sets forth that, in order to avoid misleading the public, given the lack of sophistication of many in the public concerning medical services and the importance of the interests affected by the choice of a physician, a physician is prohibited from offering some form of payment or consideration to a third party in exchange for a referral. Rule 0880-2-.13(1). Unlike a referral earned by merit, such paid referrals can only mislead the public as to the quality of medical care it will receive. Whether such paid referrals come from other physicians, those outside the field of medicine, or current or former patients is irrelevant. A current or former patient who is paid to refer his or her physician can be just as misleading as any other person who is paid to refer such physician. Therefore, the Board's interpretation of the term "third party" in the rule is not inconsistent with the rule's purpose. This Court affirms the Board's interpretation of Rule 0880-2-.13(4)(t).

**Unprofessional, Dishonorable, or Unethical Conduct**

Next, Appellant argues that, because the Board found he was not "unprofessional, dishonorable, and unethical," it was error for the Board to find him in violation of Rule 0880-2-

.13(4)(t). Appellant mistakenly interprets the requirements of the rule and fails to consider the context in which the Board set forth this conclusion of law.

Rule 0880-2-.13(4)(t) states that the act of offering consideration to a third party in return for a referral constitutes "unethical and unprofessional conduct." By its plain language, the rule does not require a finding that Feldman was unprofessional and unethical in order to find a violation, but rather, it is merely characterizing such behavior as unprofessional and unethical. When the Board deliberated over whether Feldman's conduct was unprofessional, dishonorable or unethical, it had already found Feldman in violation of Rule 0880-2-.13(4)(t) and moved on to discuss Tenn. Code Ann. § 63-6-214(b)(1) (2003) which lists these three terms as grounds for disciplinary action. This section was deliberated upon because it was one of the charges filed against Feldman by the Department of Health. It was this statute, not Rule 0880-2-.13(4)(t), that Feldman had not violated. Therefore, upon examination of the language in Rule 0880-2-.13(4)(t) and the transcript of the administrative hearing, we hold the Board committed no error when it found Feldman was in violation of the Board's rule.

### Willfulness of the Violation

Finally, Feldman makes two arguments concerning the Board's conclusion that he willfully violated Rule 0880-2-.13(4)(t). Specifically, Feldman argues the Board's application of the definition of willful was arbitrary and capricious, and the evidence of willfulness was insufficient to meet the substantial and material evidence standard. Both of Appellant's arguments are unsupported.

As noted above, an administrative agency's decision is not arbitrary and capricious as long as there is any rational basis for its conclusions. *MobileComm of Tenn.*, 876 S.W.2d at 104. In addition, a Board's findings of fact and conclusions of law must be supported by substantial and material evidence, which has been defined as more than a scintilla but less than a preponderance. Tenn. Code Ann. § 4-5-322(h) (2003); *Tenn. Solid Water Disposal Control Bd.*, 756 S.W.2d at 280.

In this case, the Administrative Law Judge instructed the Board members that they must find Dr. Feldman acted willfully to be in violation of the regulations and defined "willful" to mean not accidental or inadvertent but voluntary and intentional. Appellant argues that, since he defended against both the directory regulation and the referral regulation by stating he was unaware of both regulations and the Board found he had only violated the referral regulation, the Board must have applied a specific intent standard for the directory regulation and a general intent standard for the referral regulation. Therefore, Feldman argues, the conclusion of the Board that he was in violation of Rule 0880-2-.13(4)(t) is arbitrary and capricious. Upon our review of the record, we find no support for this argument. The evidence for the directory violation under Rule 0880-2-.13(4)(p) supports the Board's conclusion that the violation was accidental rather than willful. While Feldman did not have a directory posted, he did have his license posted in a conspicuous place. In addition, Feldman and his personnel wore name tags to identify themselves. On the other hand, for the referral regulation, the Board's conclusion that Feldman's actions were willful is supported by a different set

of evidence. Feldman testified that he did, in fact, send the postcards at issue, that he sent approximately eight thousand postcards, that he had access to the regulations but only looked at them when he questioned a competitor's advertisement, and that he was the first physician to advertise in Tennessee in 1979. The evidence presented affords the Board a rational basis for concluding that, while Feldman did not willfully violate Rule 0880-2-.13(4)(p) requiring the posting of a directory, he willfully violated Rule 0880-2-.13(4)(t) prohibiting the offering of consideration in return for a referral. Therefore, we hold the Board did not act arbitrarily or capriciously in reaching its decision on the question of willfulness.

In addition, Appellant argues that this Court should reverse the decision of the Board because there is no substantial and material evidence to support the conclusion that he willfully violated Rule 0880-2-.13(4)(t). After reviewing the record of the administrative hearing below, this argument also fails. In this case, Feldman testified that he offered a discount in return for bringing in a new patient, that, even though he does not remember giving the discount, he would have if one of his patients brought in a new patient, that he decided to consult the advertising regulations only after he questioned a competitor's ad but not before sending approximately eight thousand postcards of his own, and that he had been advertising as a physician since 1979. We hold there is more than a mere scintilla of evidence to support the Board's conclusion that Feldman willfully violated Rule 0880-2-.13(4)(t). Therefore, we affirm the Board's conclusions of law with regard to willfulness.

## Conclusion

For the foregoing reasons, we affirm the decision of the Tennessee Board of Medical Examiners. Costs are judged against Appellant, Dr. Richard Feldman, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE